UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHARLES NGUTI,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY,

    Defendant.

Civil Action No. TDC-15-0742

**MEMORANDUM OPINION**

On December 18, 2014, Plaintiff Charles Nguti filed his Complaint against Defendant Safeco Insurance Company ("Safeco") in the Circuit Court for Prince George's County, Maryland. ECF No. 2. On March 16, 2015, Safeco filed its Notice of Removal to this Court. ECF No. 1. Presently pending is Safeco's Motion to Dismiss Counts II and IV of Nguti's Complaint. ECF No. 13. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are presented as alleged in the Complaint. On January 26, 2012, a fire at Nguti's home in Hyattsville, Maryland destroyed or damaged Nguti's personal belongings, including furniture, televisions, computers, books, pictures and, clothing. That same day, Nguti notified Safeco of the fire, and Safeco issued him a claim number. For the following seven days, Nguti was homeless. Then, on February 1, 2012, CRS Temporary Housing ("CRS"), on behalf of Safeco, began to provide temporary housing for Nguti and his family. After several months of

investigating the fire, which included deposing Nguti and collecting documents from him, Safeco terminated Nguti's insurance on July 29, 2012 without notice or "justifiable reason." Compl. at 4. Nguti's mortgage lender thus arranged for force-placed insurance on the property, at Nguti's expense, during the months of uninsured status. Nguti then filed a complaint with the Maryland Insurance Administration ("MIA") to dispute the cancellation. Following an MIA investigation, Safeco reinstated "the same home insurance policy." *Id.* at 5.

On August 3, 2012, a CRS agent notified Nguti that his temporary housing would come to an end on September 2, 2012. On September 25, 2012, a Safeco representative sent him a letter denying his insurance claim relating to the fire.

On December 18, 2014, Nguti filed a four-count Complaint against Safeco in the Circuit Court for Prince George's County, Maryland. In Count I, Nguti alleges a breach of contract claim based on Safeco's failure to pay his insurance claim, and in Count III he seeks reimbursement for living expenses incurred since his temporary housing was terminated in September 2012. Counts II and IV, which are the target of Safeco's pending Motion to Dismiss, respectively assert a gross negligence claim and a breach of contract claim. Specifically, in Count II, Nguti alleges that Safeco acted with gross negligence when it subjected his family and him to "unbearable conductions during a cold season" in the week following the fire because it did not immediately provide him with temporary housing. *Id.* at 4. In Count IV, Nguti alleges that Safeco wrongfully terminated his insurance policy on July 29, 2012 "without any notices and without a justifiable reason." *Id.* Nguti therefore seeks reimbursement for the costs of the force-placed insurance coverage he had to pay following the cancellation and before Safeco reinstated his insurance policy.

## DISCUSSION

**I.   Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.   Count II: Gross Negligence**

In its Motion to Dismiss, Safeco argues that Count II, alleging gross negligence for failure to provide Nguti and his family with temporary housing for a week following the fire, should be dismissed because Safeco does not owe an independent, non-contractual duty to Nguti. Safeco is correct. Under Maryland law, from which Nguti's gross negligence claim arises, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961). A contractual obligation, including one contained in an insurance policy, does not create a tort duty by itself. *Mesmer v. Md. Automobile Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999). Thus, "when the dispute is over the existence of any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy." *Id.* at 1059.

Nguti claims that Safeco was grossly negligent when it "failed to recognize or undertake any contractual obligation whatsoever" in the seven days following the fire. *See id.* This is precisely the sort of claim that can only be remedied in a breach of contract action, which Nguti has asserted in Count I. Therefore, Count II is dismissed.

### III. Count IV: Termination of Insurance

Safeco argues that Count IV, in which Nguti asserts that Safeco improperly terminated his insurance policy for a period of time, should be dismissed because this Court does not have jurisdiction over claims challenging "underwriting practices" and because the claim is moot as a result of the policy's reinstatement. *See* Md. Code Ann., Ins. § 2-202(a) (2014). Nguti responds that although Safeco did in fact reinstate his insurance after the MIA investigation, he still had to pay for the force-placed insurance and seeks damages for those costs. Safeco's arguments on Count IV are less convincing.

The Court turns first to Safeco's jurisdictional argument. Under Maryland administrative law, there are three forms of jurisdiction when both judicial and administrative remedies are potentially available: exclusive, primary, and concurrent. *Zappone v. Liberty Life Ins.*, 706 A.2d 1060, 1067–68 (Md. 1998); *Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722, 728–29 (Md. 2011). If the MIA has exclusive jurisdiction over a type of insurance claim, the matter cannot be brought to court, either initially or following administrative action; under primary jurisdiction, the matter must first be brought to the MIA, but may be brought to court for a judicial remedy once administrative remedies are exhausted; under concurrent jurisdiction, the matter may be brought initially to court without having exhausted administrative remedies. *See Carter*, 24 A.3d at 728–29.

Safeco correctly states that the Maryland General Assembly, in a subsection of the Insurance Code entitled "Discrimination in underwriting and rate-setting practices prohibited," granted the MIA "exclusive jurisdiction to enforce by administrative action the laws of the State that relate to the underwriting or rate-setting practices of an insurer." Md. Code Ann., Ins. § 2-202(a)(1). Thus, litigants seeking to challenge the underwriting practices of their insurers must file their complaint with the MIA, as "there simply is no alternative cause of action" in state or federal courts. See Zappone, 706 A.2d at 1067.

The question Safeco raises in the Motion to Dismiss is whether its July 29, 2012 termination of Nguti's home insurance "without any notices and without a justifiable reason," Compl. at 4, constitutes "underwriting practices" that would preclude this Court's jurisdiction under section 2-202(a)(1). Although the Maryland Court of Appeals has not interpreted the limits of this definition, its discussion of the term indicates that "underwriting practices" refers to broader policies and procedures set by insurance companies, rather than a specific decision to terminate an insurance plan. For instance, the Court of Appeals has noted that the Insurance Code's prohibition on discriminatory underwriting practices, the jurisdiction of which is defined by section 2-202, originates from the General Assembly's concerns with "the practice of what it called 'redlining,' whereby insurers would refuse to renew or write policies based on the geographic area in which the insureds or applicants lived." See Travelers Indemnity Co. v. Merling, 605 A.2d 83, 88 (Md. 1992).

Nguti's claim in Count IV is a more limited challenge. It challenges the "failure to provide coverage under this policy" for a period of time and the lack of notice, which left the property "uninsured for months" and required Nguti to pay for the force-placed insurance. Compl. at 5–6. Rather than challenging Safeco's underwriting or rate-setting practices, Nguti's

claim is essentially a breach of contract claim for failure to provide coverage. Arguably, the claim could be a construed as a challenge under section 27-602 of the Insurance Code, which sets out the requirements for insurers to give notice of cancellation of personal insurance policies. *See* Md. Code Ann., Ins. § 27-602; *id.* § 27-601(c)(1) (defining "personal insurance" as including "property or casualty insurance" issued to an individual for noncommercial activities); *id.* § 1-101(gg) (defining "property insurance" as including homeowners insurance). Because this section does not contain a jurisdictional provision for an insurer's failure to provide notice as it does for an insurer's unlawful underwriting or rate-setting practices, there is a rebuttable presumption that the MIA has primary jurisdiction over such a claim. *See Carter*, 24 A.2d at 729. Thus, to the extent that Count IV challenges the lack of required notice, the Court would have jurisdiction if Nguti had first presented the matter to the MIA and exhausted administrative remedies. *See Zappone*, 706 A.2d at 1068. Although the Complaint does not provide specific details regarding Nguti's administrative claims, it asserts that Nguti filed a complaint with the MIA to challenge the cancellation, and that as a result, his insurance policy was reinstated. Because it can be inferred from this allegation, under the motion-to-dismiss standard, that Nguti exhausted any applicable administrative remedies, Safeco's claim that the Court lacks jurisdiction fails.

Safeco's argument that Count IV should be dismissed because it is moot is also unpersuasive. Although Nguti's insurance policy was reinstated after the MIA investigation, Nguti is seeking damages for the costs of the force-placed insurance coverage. Safeco does not claim that Nguti has been reimbursed for those charges as a result of the MIA proceedings. Because there remains a "live" issue for which Nguti has a "legally cognizable interest in the

outcome," Count IV is not moot. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). Safeco's Motion to Dismiss Count IV is therefore denied.

## CONCLUSION

For the foregoing reasons, Safeco's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Count II, which is DISMISSED. The Motion is DENIED as to Count IV. Safeco is directed to file its Answer within **14 days** of this Order. *See* Fed. R. Civ. P. 12(a)(4)(A). A separate Order shall issue.

Date: January 13, 2016

THEODORE D. CHUANG
United States District Judge